Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AQUANTIA CORP., LIP-BU TAN, FARAJ AALAEI, DMITRY AKHANOV, BAMI BASTANI, KEN PELOWSKI, GEOFFREY G. RIBAR, SAM SRINIVASAN, and ANDERS SWAHN, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. This is a class action brought on behalf of the public stockholders of Aquantia Corp. ("Aquantia" or the "Company") against Aquantia and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Aquantia will be acquired by Marvell Technology Group Ltd. ("Marvell") through its wholly owned subsidiary, Antigua Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2. On May 6, 2019, Aquantia and Marvell issued a joint press release announcing they had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Aquantia to Marvell. Under the terms of the Merger Agreement, Aquantia stockholders will be entitled to receive $13.25 per share in cash for each Aquantia share they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $452 million after adjusting for net cash on Aquantia's balance sheet.

3. On May 29, 2019, Aquantia filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Aquantia stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Aquantia's financial projections relied upon by the Company's financial advisor, Barclays Capital Inc. ("Barclays") in its financial analyses; (ii) the valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; and (iii) Company insiders' conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Aquantia

stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4. In short, unless remedied, Aquantia's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Aquantia is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Aquantia.

9. Defendant Aquantia is a Delaware corporation with its principal executive offices located at 91 E. Tasman Drive, Suite 100, San Jose, California 95134. Aquantia's common stock is traded on the New York Stock Exchange under the ticker symbol "AQ."

10. Defendant Lip-Bu Tan ("Tan") has served as a director of the Company since October 2015.

11. Defendant Faraj Aalaei ("Aalaei") has served as President, Chief Executive Officer ("CEO"), and a director of the Company since January2009 and as Chairman of the Board since October 2016.

12. Defendant Dmitry Akhanov ("Akhanov") has served as a director of the Company since April 2013.

13. Defendant Bami Bastani ("Bastani") has served as a director of the Company since June 2016.

14. Defendant Ken Pelowski ("Pelowski") has served as a director of the Company since April 2013.

15. Defendant Geoffrey G. Ribar ("Ribar") has served as a director of the Company since September 2017.

16. Defendant Sam Srinivasan ("Srinivasan") has served as a director of the Company since December 2015.

17. Defendant Anders Swahn ("Swahn") has served as a director of the Company since August 2008.

18. Defendants identified in paragraphs 10-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19.     Marvell is a Bermuda corporation with its principal executive offices located at Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda. Marvell's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "MRVL."

20.     Merger Sub is a Delaware corporation and a wholly owned subsidiary of Marvell.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Aquantia common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 3, 2019 there were 35,532,571 shares of Aquantia common stock outstanding. All members of the Class may be identified from records maintained by Aquantia or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

23.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

27.     Aquantia is a leader in the design, development, and marketing of advanced, high-speed communications integrated circuits for Ethernet connectivity in the data center, enterprise infrastructure, access, and automotive markets. The Company's Ethernet solutions provide a critical interface between the high-speed analog signals transported over wired infrastructure and the digital information used in computing and networking equipment. Aquantia's products are designed to deliver leading-edge data speeds for use in the latest generation of communications infrastructure in order to alleviate network bandwidth bottlenecks caused by the growth of global Internet Protocol traffic.

28. On January 29, 2019, Matt Murphy ("Murphy"), President and CEO of Marvell, met with defendant Tan, indicating that Marvell was interested in discussing a possible strategic transaction with Aquantia.

29. Thereafter, on February 19, 2019, defendant Aalaei met with Raghib Hussain ("Hussain"), Executive Vice President and Chief Strategy Officer of Marvell and Murphy to discuss Marvell's interest in a strategic transaction with Aquantia.

30. On March 21, 2019, Hussain met with Aalaei and indicated that Marvell was considering making a proposal to acquire Aquantia with a price range of between $11.00 and $12.00 per share.

31. On March 24, 2019, Marvell delivered a preliminary non-binding proposal to acquire all of Aquantia's outstanding common stock at a price of $11.75 per share in cash. Later that day, Aalaei called Hussain and indicated that the acquisition price in Marvell's proposal undervalued Aquantia.

32. On April 4, 2019, Marvell delivered a revised non-binding proposal to acquire all of Aquantia's outstanding common stock at a price of $12.50 per share in cash.

33. Also on April 4, 2019, Aalaei met with the CEO of a participant in the semiconductor industry referred to in the Proxy Statement as "Company B" to discuss terms of a possible acquisition of Aquantia by Company B.

34. On April 6, 2019, Aquantia sent a letter to Murphy (a) indicating that Aquantia was willing to continue discussions regarding a potential transaction with Marvell, (b) proposing an acquisition of all of Aquantia's outstanding common stock at a price of $14.50 per share in cash, and providing a financial presentation to support Aquantia's proposal for this higher price, and (c) indicating that Aquantia was not willing to grant exclusivity to Marvell.

35. On April 8, 2019, Murphy emailed Aalaei indicating that Marvell would be unable to increase the price per share in its proposal above $12.50.

36. On April 15, 2019, Aalaei and Murphy met to discuss the potential transaction between Aquantia and Marvell. Aalaei again reiterated that $12.50 per share was insufficient. Murphy indicated that Marvell's board of directors had approved an acquisition proposal of up to $13.00 per share in cash. Aalaei responded that Aquantia was interested in a price in the range of $14.00-$16.00 per share, but asked if Murphy believed Marvell's board of directors would approve a price of $13.50 per share. Murphy reiterated that the highest price Marvell's board of directors had authorized was $13.00 per share. Murphy and Aalaei agreed to ask their respective boards of directors to consider whether a proposal to acquire all of Aquantia's outstanding common stock at a price of $13.25 per share in cash would be acceptable. Murphy also conveyed that Marvell would be interested in continuing Aalaei's involvement with Aquantia after the completion of the proposed transaction.

37. Following this meeting, on April 15, 2019, Aalaei informed the Board that $13.25 was the best price Marvell would be willing to propose.

38. On April 16, 2019, Marvell delivered a further revised non-binding proposal to acquire Aquantia at a price of $13.25 per share in cash. The proposal indicated that Marvell would seek to identify and retain certain employees of Aquantia.

39. On April 23, 2019, the Board concluded that $13.25 per share could be an acceptable acquisition price.

40. On April 26, 2019, Company B delivered a non-binding letter of interest to Aquantia with a proposal to acquire Aquantia for $14.00 per share in cash.

41. The next day, on April 27, 2019, Aalaei and the Company B CEO discussed a potential transaction between Company B and Aquantia, including Aquantia's need to have a

- 8 -

definitive agreement executed before May 6, 2019 in advance of its earnings release. The Company B CEO indicated Company B would commit the necessary legal and financial resources to signing a definitive agreement by that date. Also on April 27, 2019, representatives of Aquantia, Barclays, Company B and its financial advisors had a call to discuss the contents of the Aquantia data room and the plan for due diligence in order to announce a transaction by May 6, 2019.

42. On April 29, 2019, the Company B CEO emailed Aalaei to withdraw Company B's proposal and withdraw from Aquantia's sale process. Aalaei called the Company B CEO who indicated that given the large volume of materials provided in the data room, Company B had concluded it did not have the necessary resources to conduct a proper due diligence review and sign a definitive acquisition agreement prior to Aquantia's earnings release.

43. That same day, Aalaei and Hussain met and Aalaei requested an increase to the proposed acquisition price. Hussain responded that Marvell would not increase its proposed price per share above $13.25.

44. At a May 3, 2019 Board meeting, Aalaei indicated that Marvell had requested that he remain employed with Aquantia after the completion of the potential transaction.

45. On May 5, 2019, the Board met, Barclays rendered its fairness opinion and the Board authorized management to execute the Merger Agreement with Marvell.

46. The following day, on May 6, 2019, Aquantia and Marvell issued a joint press release announcing the Proposed Transaction, which stated, in relevant part:

> SANTA CLARA, Calif. and SAN JOSE, Calif., May 6, 2019 /PRNewswire/: Marvell Technology Group Ltd. (NASDAQ: MRVL), a leader in infrastructure semiconductor solutions, and Aquantia, Corp. (NYSE: AQ), a leader in Multi-Gig Ethernet connectivity, today announced a definitive agreement, approved by the boards of directors of both companies, under which Marvell will acquire all outstanding shares of Aquantia common stock in exchange for consideration of $13.25 per share in cash.
>
> The acquisition of Aquantia complements Marvell's portfolio of copper and optical physical layer product offerings and extends its position in the Multi-

Gig 2.5G/5G/10G Ethernet segments. In particular, Aquantia's innovative Multi-gig automotive PHYs, coupled with Marvell's industry-leading gigabit PHY and secure switch products, creates the broadest and most advanced range of high-speed in-car networking solutions in the world. This unique combination accelerates Marvell's vision for the future of automotive networking with speeds necessary to enable level 4 and 5 autonomous driving.

As the automotive industry increasingly adopts Ethernet in-vehicle networks for mainstream models, the number of related ports is expected to grow dramatically at a 62% annualized growth trajectory, from 53 million in 2018 to 367 million by 2022. "Our acquisition of Aquantia will fuel Marvell's leadership in the transformation of the in-car network to high-speed Ethernet over the next decade," said Matt Murphy, president and CEO of Marvell. "At the same time, Aquantia extends our reach in the rapidly emerging Multi-Gig segment of network infrastructure and creates a leading end-to-end Ethernet connectivity portfolio."

"Marvell and Aquantia share a vision where the network – whether in an autonomous vehicle, an enterprise application or in cloud infrastructure – can seamlessly power the data economy," said Faraj Aalaei, chairman and CEO of Aquantia. "This is a fantastic opportunity as our customers will benefit from Marvell's global scale and expanding footprint in Multi-Gig network applications."

The transaction is expected to be immediately accretive to Marvell's non-GAAP earnings per share and generate significant annual run-rate synergies of $40 million to be realized within 12 months after the transaction closes.

**Transaction Structure and Terms**

Under the terms of the definitive agreement, Marvell will pay Aquantia's stockholders $13.25 per share in cash. This represents approximately $452 million in transaction value after adjusting for net cash on Aquantia's balance sheet. Marvell intends to finance the transaction with cash on hand and revolver borrowings. The transaction is not subject to any financing condition and is expected to close by the end of CY2019, subject to regulatory approval as well as other customary closing conditions, including the adoption by Aquantia's stockholders of the merger agreement.

In connection with the execution of the definitive agreement, certain stockholders of Aquantia, together holding approximately 17 percent of the outstanding shares of common stock of Aquantia, have agreed to vote their shares in favor of the transaction under a voting and support agreement.

**Insiders' Interests in the Proposed Transaction**

47.     Aquantia insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted

because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Aquantia.

48.  Notably, on April 15, 2019 Murphy conveyed Marvell's interest in continuing Aalaei's involvement with Aquantia after the completion of the Proposed Transaction.

49.  Further, Aquantia directors and executive officers stand to reap substantial financial benefits for securing the deal with Marvell. According to the Merger Agreement, certain Aquantia restricted stock units and stock options will vest and be converted into cash, as set forth in the following table:

| Name | Number of Company Options | Number of Company RSUs | Value of Company Options and Company RSUs ($) |
|---|---|---|---|
| **Executive Officers** | | | |
| Faraj Aalaei | 473,204 | 342,500 | $ 9,196,749 |
| Pirooz Parvarandeh | 85,816 | 106,546 | $ 2,107,637 |
| Mark Voll | — | 155,463 | $ 2,059,885 |
| David Quarles | — | 100,000 | $ 1,325,000 |
| Kamal Dalmia | — | — | $ — |
| **Directors** | | | |
| Dmitry Akhanov | — | 5,181 | $ 68,648 |
| Bami Bastani | — | 5,181 | $ 68,648 |
| Ken Pelowski | — | 5,181 | $ 68,648 |
| Geoffrey G. Ribar | — | 5,181 | $ 68,648 |
| Sam Srinivasan | 8,000 | 5,181 | $ 139,448 |
| Anders Swahn | 38,000 | 5,181 | $ 472,448 |
| Lip-Bu Tan | — | 5,181 | $ 68,648 |
| **All of our current directors and executive officers as a group (12 persons)** | 605,020 | 740,776 | $ 15,644,407 |

50.  Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($) (2) | Equity ($) (3) | Perquisites/ Benefits ($) (4) | Total ($) (5) |
|---|---|---|---|---|
| Faraj Aalaei | $675,000 | $3,279,375 | $ 40,428 | $3,994,803 |
| Pirooz Parvarandeh | $335,000 | $1,151,014 | $ 218,470 | $1,704,484 |
| Mark Voll | $300,000 | $1,549,817 | $ 28,980 | $1,878,797 |
| David Quarles | $137,500 | $ 414,063 | $ 13,200 | $ 564,763 |

**The Proxy Statement Contains Material Misstatements and Omissions**

51.  The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Aquantia's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

52.  Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Aquantia's financial projections relied upon by the Company's financial advisor, Barclays in its financial analyses; (ii) the valuation analyses prepared by Barclays in connection with the rendering of its fairness opinion; and (iii) Company insiders' conflicts of interest. Accordingly, Aquantia stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Aquantia Management's Financial Projections*

53.  The Proxy Statement omits material information regarding Company management's financial projections relied upon by Barclays for its analyses.

54.  The Proxy Statement sets forth:

The projections of prospective financial information (for calendar years 2019-2023) were initially prepared by Aquantia management on April 3, 2019 (the "Initial Management Projections"). Those projections were subsequently updated, on April 26, 2019, only to reflect a revised forecast for 2019 based on the actual results of the first fiscal quarter, which ended on March 31, 2019 (the "Updated Management Projections" and together with the Initial Management Projections, the

"Management Projections"). The Updated Management Projections were provided to Barclays on April 26, 2019 in connection with the rendering of its opinion to our Board of Directors, and the performance of its related financial analyses.

Proxy Statement at 40.

55.   The Proxy Statement fails, however, to provide the full set of Initial Management Projections for calendar years 2019-2023, and only provides financial information for 2019. The Proxy Statement further fails to make clear whether the only difference between the "Initial Management Projections" and the "Updated Management Projections" was the 2019 forecast or whether the forecast for the calendar years spanning 2020-2023 in the "Updated Management Projections" were also updated in connection with the revised forecast for 2019.

56.   Additionally, with respect to the Company's financial projections, the Proxy Statement fails to disclose all line items used to calculate EBITDAS.

57.   The omission of this information renders the statements in the "Certain Management Projections Utilized by Aquantia in Connection with the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Barclays' Financial Analyses***

58.   The Proxy Statement describes Barclays' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Barclays' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Aquantia's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Aquantia's stockholders.

59. With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the projected after-tax unlevered free cash flows used by Barclays in the analysis; (ii) the estimated terminal value of Aquantia; (iii) Barclays' basis for assuming a range of NTM adjusted EBITDAS exit multiples of 9.0x to 11.0x; (iv) quantification of the individual inputs and the assumptions underlying the range of discount rates of 14.5% to 16.0% and the range of perpetuity growth rates of 3.0% to 5.0%; (v) net debt; and (vi) the fully diluted number of shares of Aquantia common stock.

60. With respect to Barclays' *Equity Research Target Prices Review*, the Proxy Statement fails to disclose: (i) the price targets for shares of Aquantia common stock; and (ii) the sources thereof.

61. With respect to Barclays' *Transaction Premium Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Barclays in the analysis; and (ii) the premiums paid in the observed transactions.

62. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

63. The omission of this information renders the statements in the "Opinion of Aquantia's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Conflicts of Interest***

64. Further, the Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Aquantia insiders.

65. The Proxy Statement sets forth that:

> On April 15, 2019, Messrs. Aalaei and Murphy met to discuss the potential transaction between Aquantia and Parent. Mr. Aalaei again reiterated that $12.50

- 14 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

> was not a high enough price per share for Aquantia to enter into a transaction. Mr. Murphy then told Mr. Aalaei that Parent's board of directors had approved an acquisition proposal of up to $13.00 per share in cash. In response, Mr. Aalaei indicated that Aquantia was interested in a price in the range of $14.00-$16.00 per share, but asked if Mr. Murphy believed Parent's board of directors would approve a price of $13.50 per share. Mr. Murphy reiterated that the highest price Parent's board of directors had authorized was $13.00 per share. After discussing each other's views further, Mr. Murphy and Mr. Aalaei agreed to ask their respective boards of directors to consider whether a proposal to acquire all of Aquantia's outstanding common stock at a price of $13.25 per share in cash would be acceptable. Mr. Murphy also conveyed that Parent would be interested in continuing Mr. Aalaei's involvement with Aquantia after the completion of the proposed transaction. Mr. Murphy outlined two proposals — one that would involve Mr. Aalaei continuing in a full time role and another that would involve Mr. Aalaei assisting with transition and integration. Mr. Murphy did not discuss a proposed salary, title or any other terms of employment or engagement for Mr. Aalaei. Mr. Aalaei indicated that he might be willing to help with integrating the two companies, but could not commit to anything at that time.

*Id.* at 22. The Proxy Statement, however, fails to disclose whether Murphy dangled Marvell's interest in post-close employment for Aalaei before or after Aalaei asked if Murphy believed Marvell's board of directors would approve a price of $13.50 per share, a price lower than the range of $14.00-$16.00 per share Aalaei initially indicated Aquantia was interested in. In short, Aquantia stockholders need to be provided with this information to determine whether Aalaei failed to stand firm on Aquantia's price range and caved on a price beneficial to Marvell in order to secure a transaction where he would be offered lucrative future employment opportunities.

66. The Proxy Statement sets forth that *over two weeks later*, on May 3, 2019, the Board met and "Aalaei [ ] indicated that Parent had requested that he remain employed with Aquantia after the completion of the potential transaction, but that he had not discussed compensation, title or terms of employment with Parent." *Id.* at 26. The Proxy Statement fails to disclose whether this was the first time the Board or any of its members was made aware of Marvell and Aalaei's employment discussions, whether Aalaei informed the Board of the timing of his employment discussions with Marvell and whether the Board discussed if the price negotiations with Marvell were tainted by Marvell's employment discussions with Aalaei.

67. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68. The omission of this information renders the statements in the "Background of the Merger" and "Interests of Our Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

69. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Class Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act And SEC Rule 14a-9 Promulgated Thereunder**

70. Plaintiff repeats all previous allegations as if set forth in full.

44. SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier

communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. The Proxy Statement misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor and Company insiders' conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or whether to seek appraisal. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

- 17 -
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## COUNT II

**Class Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of Aquantia within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Aquantia and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

54.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Aquantia, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Aquantia stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 11, 2019

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS